United States District Court
Southern District of Texas
**ENTERED**
August 21, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WILLIAM DARRELL EDWARDS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-209 |
| | § | |
| LORIE DAVIS, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**
**TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE**

William Darrell Edwards is a Texas inmate appearing *pro se* and *in forma pauperis*. He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A. For purposes of screening, Plaintiff has stated an equal protection claim against the **Director of the Texas Department of Criminal Justice (TDCJ), Lorie Davis**, in her official capacity for injunctive and declaratory relief. The undersigned will order service on this defendant.

The undersigned further recommends that Plaintiff's remaining claims against Defendants Davis and Joni White be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for the reasons set forth below.

**I.    JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.   PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner at the McConnell Unit of the TDCJ. He is currently serving several life sentences on four convictions for aggravated sexual assault of a child and two twenty-year sentences on convictions for indecency with a child by sexual contact. These convictions were entered on December 19, 2001, in Potter County, Texas.

Plaintiff sues the following defendants: (1) TDCJ Director Lorie Davis; and (2) Joni White, the TDCJ Assistant Director-Classifications and Records. Plaintiff claims that his due process and equal protection rights were violated when the TDCJ applied a new policy to reclassify Plaintiff from his G2 custody classification level to the more restrictive G3 classification level. Plaintiff seeks declaratory and injunctive relief.

A *Spears*[1] hearing was conducted on August 8, 2018. The following representations were made either at the hearing or in Plaintiff's original complaint (D.E. 1): In January 2002, Plaintiff entered into the TDCJ prison system and was subsequently classified at the G3 custody level in late March 2002.

Under the G3 custody level, inmates are only allowed to have certain jobs such as working in the kitchen. In contrast, inmates with a G2 custody level have more favorable options with regard to jobs assignments within the prison. G2 prisoners also have the

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

ability to learn a trade.  With regard to housing, G3 inmates are assigned to the main building in a two-man cell where the cell door is locked during the day.  Inmates classified at the G2 custody level live in dormitories where the door is not locked and inmates can come and go.

In 2010, Plaintiff was classified at the G2 custody level and was subsequently moved into the prison dorms.  As a G2 inmate, Plaintiff was assigned to work in the garment factory.  For six years, Plaintiff remained classified at the G2 custody level.  On September 13, 2016, the Unit Classification Committee (UCC) applied a new policy (UCC Policy Procedure 2.00) to reclassify Plaintiff back to the more restrictive G3 custody level.  Under the new policy, which became effective in 2016, inmates with consecutive sentences accumulating more than sixty years must be classified at the G3 custody level.  Plaintiff was reclassified due to having received consecutive life and twenty-year sentences out of Potter County.

As a result of his reclassification, Plaintiff was moved from the dorms and placed in a more restrictive environment with another G3 custody level inmate.  Plaintiff lost his job in the garment factor, where he had worked for fourteen years, and was assigned to work in the kitchen.  Plaintiff testified at the *Spears* hearing that kitchen work is not necessarily less favorable than working in the garment factory.  Plaintiff nevertheless preferred to work in the garment factory because he did not have to work on weekends.

Plaintiff testified that other inmates with multiple consecutive life sentences have remained classified at the G2 custody level.  Plaintiff specifically cited one inmate with multiple consecutive life sentences who still lives in the dorms.  Plaintiff has filed both

informal and formal grievances challenging his reclassification to the G3 custody level. Plaintiff attached as set of Step 1 and Step 2 grievances to his complaint, in which he identified other inmates with similar consecutive sentences as receiving more favorable treatment in being returned to G2 status, remaining in the dorms, and getting their former jobs back. (D.E. 1, pp. 7, 9). Nevertheless, all of Plaintiff's grievances were rejected based on the new UCC policy as applied to him. (D.E. 1, pp. 8, 10).

In addition to declaratory relief, Plaintiff seeks injunctive relief in the form of being returned to the G2 custody classification level, his original housing in the dorms, and his job in the garment factory. (D.E. 1, pp. 4-5). Plaintiff sues TDCJ Director Davis because she is in charge of the TDCJ and approved of the 2016 policy change that led to Plaintiff's reclassification. Plaintiff names Assistant Director White because she is in charge of inmate classifications and records. Of the two named defendants, Plaintiff believes that TDCJ Director Davis is more likely to have the authority to grant Plaintiff the injunctive relief he seeks.

## III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis,* the Court shall evaluate the complaint and dismiss it without service of process, if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune

defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted).

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV.    DISCUSSION

### A.    Due Process

Plaintiff claims that his due process rights were violated because he has a liberty interest in maintaining his G2 classification.  Plaintiff contends that he earned his G2 custody classification level and that the decision to reclassify him at G3 ignores his time spent as a model inmate at the G2 level.

It is well settled that a prisoner has no liberty interest in his custodial level or classification unless he can demonstrate that it imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "The difference between administrative segregation and general population is much greater than the difference between G-2 and G-3, both of which are general population classifications." *Lane v. Director, TDCJ-CID*, No. 6:17-CV-504, 2017 WL 8681965, at *2 (E.D. Tex. Dec. 7, 2017).  Yet, "an inmate's placement in administrative segregation, without more, does not constitute the deprivation of a constitutionally protected liberty interest." *Id*. (citing *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995).

Plaintiff's allegations, accepted as true, fail to state a due process claim.  His placement in a more restrictive housing environment and change in job assignments after being reclassified to a G3 custody level fail to constitute atypical or significant hardships. *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998).  *Compare Blair v. Davis*, No. 5:17-CV-276, 2018 WL 1083620, at

*2 (N.D. Tex. Feb. 28, 2018) (holding that prisoner's G5 custody status and placement in restrictive housing with no windows and constant fluorescent lighting fails to meet the *Sandin* standard); *with Wilkinson v. Austin*, 545 U.S. 209, 214 (2005) (holding that prisoner's confinement in a super-max facility created a liberty interest in being free from such conditions where almost all human contact was prohibited, inmates were kept in single cells behind solid doors for 23 hours a day, lights remained on at all time, visitation was rare, and inmates were disqualified from parole consideration). Because Plaintiff's allegations fail to state a liberty interest in maintaining a G2 custodial classification, the undersigned respectfully recommends that Plaintiff's due process claim against Defendants be dismissed for failure to state a claim and/or as frivolous.

## B.    Equal Protection

Plaintiff claims that his equal protection rights were violated because the implementation of the new internal classification policy has resulted in him being treated less favorably than inmates who were similarly situated. The Equal Protection Clause of the Fourteenth Amendment states that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. The Equal Protection Clause directs that similarly situated people should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

Equal protection jurisprudence typically has been concerned with governmental classifications that affect some groups of citizens differently than others. *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008). Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an identifiable group. *Id.* An

equal protection claim can also be made when a plaintiff, rather than alleging class-based discrimination, alleges that he has been singled out as a so-called "class of one." *Id.* (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)) (per curiam). A plaintiff makes a "class of one" claim when he alleges that he has been intentionally treated differently from others similarly situated without a rational basis for the difference in treatment. *Id.* (citing *Olech*, 528 U.S. at 564).

In this case, Plaintiff alleges that other inmates with multiple consecutive life sentences have been returned to the G2 custody level, have remained in the dorms, and have received their old jobs back. In his testimony at the *Spears* hearing, Plaintiff specifically cited one inmate with multiple-stacked life sentences as still living in the dorms. Plaintiff's allegations suggest that other inmates similarly situated to him are receiving more favorable treatment and that no rational basis exists for the difference in treatment. *See Lane*, 2017 WL 8681965, at *2 (dismissing prisoner's equal protection claim brought in a habeas corpus action because he failed to identify any other similarly-situated inmates having sentences equivalent to life without parole that were permitted to have G2 custody level status).

With respect to Plaintiff's request for declaratory and injunctive relief, TDCJ Director Davis appears to be the individual most likely able to fashion the relief Plaintiff is seeking should he prevail on his equal protection claim. At the *Spears* hearing, Plaintiff expressed his belief that TDCJ Director Davis is more likely than Assistant Director White to have the authority to grant Plaintiff the injunctive relief he seeks. Because TDCJ Director Davis is the best person to implement the injunctive relief

requested, the undersigned respectfully recommends that Plaintiff's equal protection claim be retained as to Defendant Davis in her official capacity only and dismissed as to Defendant White.

## V.     CONCLUSION

For purposes of § 1915A, Plaintiff has stated sufficient facts that, if true, state an equal protection claim against **TDCJ Director Davis** in her official capacity for injunctive and declaratory relief.  Accordingly, it is respectfully recommended that this claim be **RETAINED.**  The undersigned will order service as to **TDCJ Director Davis** by separate order.  It is respectfully recommended that all remaining claims and Defendant White be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE

William Darrell Edwards is a Texas inmate appearing *pro se* and *in forma pauperis*.  He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.  For purposes of screening, Plaintiff has stated an equal protection claim against the **Director of the Texas Department of Criminal Justice (TDCJ), Lorie Davis**, in her official capacity for injunctive and declaratory relief.  The undersigned will order service on this defendant.

The undersigned further recommends that Plaintiff's remaining claims against Defendants Davis and Joni White be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for the reasons set forth below.

## I.    JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner at the McConnell Unit of the TDCJ.  He is currently serving several life sentences on four convictions for aggravated sexual assault of a child and two twenty-year sentences on convictions for indecency with a child by sexual contact.  These convictions were entered on December 19, 2001, in Potter County, Texas.

Plaintiff sues the following defendants: (1) TDCJ Director Lorie Davis; and (2) Joni White, the TDCJ Assistant Director-Classifications and Records.  Plaintiff claims that his due process and equal protection rights were violated when the TDCJ applied a new policy to reclassify Plaintiff from his G2 custody classification level to the more restrictive G3 classification level.  Plaintiff seeks declaratory and injunctive relief.

A *Spears*[2] hearing was conducted on August 8, 2018.   The following representations were made either at the hearing or in Plaintiff's original complaint (D.E. 1):  In January 2002, Plaintiff entered into the TDCJ prison system and was subsequently classified at the G3 custody level in late March 2002.

Under the G3 custody level, inmates are only allowed to have certain jobs such as working in the kitchen.  In contrast, inmates with a G2 custody level have more favorable options with regard to jobs assignments within the prison.  G2 prisoners also have the ability to learn a trade.  With regard to housing, G3 inmates are assigned to the main building in a two-man cell where the cell door is locked during the day.  Inmates classified at the G2 custody level live in dormitories where the door is not locked and inmates can come and go.

In 2010, Plaintiff was classified at the G2 custody level and was subsequently moved into the prison dorms.  As a G2 inmate, Plaintiff was assigned to work in the garment factory.  For six years, Plaintiff remained classified at the G2 custody level.  On September 13, 2016, the Unit Classification Committee (UCC) applied a new policy (UCC Policy Procedure 2.00) to reclassify Plaintiff back to the more restrictive G3 custody level.  Under the new policy, which became effective in 2016, inmates with consecutive sentences accumulating more than sixty years must be classified at the G3

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

custody level.   Plaintiff was reclassified due to having received consecutive life and twenty-year sentences out of Potter County.

As a result of his reclassification, Plaintiff was moved from the dorms and placed in a more restrictive environment with another G3 custody level inmate.   Plaintiff lost his job in the garment factor, where he had worked for fourteen years, and was assigned to work in the kitchen.   Plaintiff testified at the *Spears* hearing that kitchen work is not necessarily less favorable than working in the garment factory.   Plaintiff nevertheless preferred to work in the garment factory because he did not have to work on weekends.

Plaintiff testified that other inmates with multiple consecutive life sentences have remained classified at the G2 custody level.   Plaintiff specifically cited one inmate with multiple consecutive life sentences who still lives in the dorms.   Plaintiff has filed both informal and formal grievances challenging his reclassification to the G3 custody level. Plaintiff attached as set of Step 1 and Step 2 grievances to his complaint, in which he identified other inmates with similar consecutive sentences as receiving more favorable treatment in being returned to G2 status, remaining in the dorms, and getting their former jobs back.   (D.E. 1, pp. 7, 9).   Nevertheless, all of Plaintiff's grievances were rejected based on the new UCC policy as applied to him.   (D.E. 1, pp. 8, 10).

In addition to declaratory relief, Plaintiff seeks injunctive relief in the form of being returned to the G2 custody classification level, his original housing in the dorms, and his job in the garment factory.   (D.E. 1, pp. 4-5).   Plaintiff   sues   TDCJ   Director Davis because she is in charge of the TDCJ and approved of the 2016 policy change that

led to Plaintiff's reclassification.  Plaintiff names Assistant Director White because she is in charge of inmate classifications and records.  Of the two named defendants, Plaintiff believes that TDCJ Director Davis is more likely to have the authority to grant Plaintiff the injunctive relief he seeks.

## III.   LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis,* the Court shall evaluate the complaint and dismiss it without service of process, if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989).  A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).   A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d

322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted).

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV.    DISCUSSION

### C.    Due Process

Plaintiff claims that his due process rights were violated because he has a liberty interest in maintaining his G2 classification. Plaintiff contends that he earned his G2 custody classification level and that the decision to reclassify him at G3 ignores his time spent as a model inmate at the G2 level.

It is well settled that a prisoner has no liberty interest in his custodial level or classification unless he can demonstrate that it imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "The difference between administrative segregation and general population is much greater than the difference between G-2 and G-3, both of which are general population classifications." *Lane v. Director, TDCJ-CID*, No. 6:17-CV-504, 2017 WL 8681965, at *2 (E.D. Tex. Dec. 7, 2017). Yet, "an inmate's placement in administrative segregation, without more, does not constitute the deprivation of a constitutionally protected liberty interest." *Id.* (citing *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995).

Plaintiff's allegations, accepted as true, fail to state a due process claim. His placement in a more restrictive housing environment and change in job assignments after being reclassified to a G3 custody level fail to constitute atypical or significant hardships. *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998). *Compare Blair v. Davis*, No. 5:17-CV-276, 2018 WL 1083620, at *2 (N.D. Tex. Feb. 28, 2018) (holding that prisoner's G5 custody status and placement in restrictive housing with no windows and constant fluorescent lighting fails to meet the *Sandin* standard); *with Wilkinson v. Austin*, 545 U.S. 209, 214 (2005) (holding that prisoner's confinement in a super-max facility created a liberty interest in being free from such conditions where almost all human contact was prohibited, inmates were kept in

single cells behind solid doors for 23 hours a day, lights remained on at all time, visitation was rare, and inmates were disqualified from parole consideration).  Because Plaintiff's allegations fail to state a liberty interest in maintaining a G2 custodial classification, the undersigned respectfully recommends that Plaintiff's due process claim against Defendants be dismissed for failure to state a claim and/or as frivolous.

### D.      Equal Protection

Plaintiff claims that his equal protection rights were violated because the implementation of the new internal classification policy has resulted in him being treated less favorably than inmates who were similarly situated.  The Equal Protection Clause of the Fourteenth Amendment states that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV § 1.  The Equal Protection Clause directs that similarly situated people should be treated alike.  *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

Equal protection jurisprudence typically has been concerned with governmental classifications that affect some groups of citizens differently than others.  *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008).  Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an identifiable group.  *Id.*  An equal protection claim can also be made when a plaintiff, rather than alleging class-based discrimination, alleges that he has been singled out as a so-called "class of one."  *Id.* (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)) (per curiam).  A plaintiff makes a "class of one" claim when he alleges that he has been intentionally treated

differently from others similarly situated without a rational basis for the difference in treatment. *Id.* (citing *Olech*, 528 U.S. at 564).

In this case, Plaintiff alleges that other inmates with multiple consecutive life sentences have been returned to the G2 custody level, have remained in the dorms, and have received their old jobs back. In his testimony at the *Spears* hearing, Plaintiff specifically cited one inmate with multiple-stacked life sentences as still living in the dorms. Plaintiff's allegations suggest that other inmates similarly situated to him are receiving more favorable treatment and that no rational basis exists for the difference in treatment. *See Lane*, 2017 WL 8681965, at *2 (dismissing prisoner's equal protection claim brought in a habeas corpus action because he failed to identify any other similarly-situated inmates having sentences equivalent to life without parole that were permitted to have G2 custody level status).

With respect to Plaintiff's request for declaratory and injunctive relief, TDCJ Director Davis appears to be the individual most likely able to fashion the relief Plaintiff is seeking should he prevail on his equal protection claim. At the *Spears* hearing, Plaintiff expressed his belief that TDCJ Director Davis is more likely than Assistant Director White to have the authority to grant Plaintiff the injunctive relief he seeks. Because TDCJ Director Davis is the best person to implement the injunctive relief requested, the undersigned respectfully recommends that Plaintiff's equal protection claim be retained as to Defendant Davis in her official capacity only and dismissed as to Defendant White.

## V.      CONCLUSION

For purposes of § 1915A, Plaintiff has stated sufficient facts that, if true, state an equal protection claim against **TDCJ Director Davis** in her official capacity for injunctive and declaratory relief.   Accordingly, it is respectfully recommended that this claim be **RETAINED.**   The undersigned will order service as to **TDCJ Director Davis** by separate order.   It is respectfully recommended that all remaining claims and Defendant White be **DISMISSED** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted this 21st day of August, 2018.


                                                        Jason B. Libby
                                          United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).