Case 2:18-cv-00209 Document 19 Filed on 03/14/19 in TXSD Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
March 14, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WILLIAM DARRELL EDWARDS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-209 |
| | § | |
| LORIE DAVIS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DENY DIRECTOR DAVIS'S MOTION TO DISMISS

Plaintiff William Darrell Edwards is an inmate appearing *pro se* and *in forma pauperis*. In this prisoner civil rights action filed pursuant to 42 U.S.C. § 1983, Plaintiff claims that his due process and equal protections rights were violated when his custody classification level was lowered to a more restrictive level. Pending before the Court is a Motion to Dismiss filed by Defendant Lorie Davis. (D.E. 12). For the reasons stated herein, it is respectfully recommended that the Court **DENY** this motion.

### I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

### II. BACKGROUND

Plaintiff is a prisoner at the McConnell Unit of the TDCJ. He is currently serving several life sentences on four convictions for aggravated sexual assault of a child and two

twenty-year sentences on convictions for indecency with a child by sexual contact. These convictions were entered on December 19, 2001, in Potter County, Texas.

Plaintiff sues the following defendants: (1) TDCJ Director Lorie Davis; and (2) Joni White, the TDCJ Assistant Director-Classifications and Records. Plaintiff claims that his due process and equal protection rights were violated when the TDCJ applied a new policy to reclassify Plaintiff from his G2 custody classification level to the more restrictive G3 classification level. Plaintiff seeks declaratory and injunctive relief.

A *Spears*[1] hearing was held on August 8, 2018. On August 21, 2018, the undersigned issued a Memorandum and Recommendation (M&R), recommending that the Court: (1) retain Plaintiff's equal protection claim against TDCJ Director Davis in her official capacity for injunctive and declaratory relief; and (2) dismiss all remaining claims and Defendant White for failure to state a claim and/or as frivolous. (D.E. 8). The undersigned ordered service of Plaintiff's complaint on Director Davis. (D.E. 10). On October 5, 2018, Director Davis filed a Motion to Dismiss. (D.E. 12). Plaintiff subsequently filed his response to Director Davis's motion. (D.E. 15).

### III. PLAINTIFF'S ALLEGATIONS

The following representations relevant to Plaintiff's equal protection claim against Director Davis were made either in Plaintiff's original complaint (D.E. 1) or at the *Spears*

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

hearing: In January 2002, Plaintiff entered into the TDCJ prison system and was subsequently classified at the G3 custody level in late March 2002.

Under the G3 custody level, inmates are only allowed to have certain jobs such as working in the kitchen. In contrast, inmates with a G2 custody level have more favorable options with regard to jobs assignments within the prison. G2 prisoners also have the ability to learn a trade. With regard to housing, G3 inmates are assigned to the main building in a two-man cell where the cell door is locked during the day. Inmates classified at the G2 custody level live in dormitories where the door is not locked, and inmates can come and go from their cells.

In 2010, Plaintiff was classified at the G2 custody level and was subsequently moved into the prison dorms. As a G2 inmate, Plaintiff was assigned to work in the garment factory.  On September 13, 2016, the Unit Classification Committee (UCC) applied a new policy, effective September 1, 2016, to reclassify Plaintiff back to the more restrictive G3 custody level.  The new policy applied to any inmate who has consecutive sentences where the total amount of time needed to become parole eligible on the consecutive sentences exceeds 60 years.  The UCC explained to Plaintiff that he was reclassified due to having received consecutive life sentences and twenty-year sentences out of Potter County.

Plaintiff testified that other inmates with multiple consecutive life sentences have remained classified at the G2 custody level. Plaintiff specifically cited one inmate with multiple consecutive life sentences who still lives in the dorms. Plaintiff has filed both informal and formal grievances challenging his reclassification to the G3 custody level.

Plaintiff attached a set of Step 1 and Step 2 grievances to his complaint, in which he identified other inmates with similar consecutive sentences as receiving more favorable treatment in being returned to G2 status, remaining in the dorms, and getting their former jobs back. (D.E. 1, pp. 7, 9). Nevertheless, all of Plaintiff's grievances were rejected based on the new UCC policy as applied to him. (D.E. 1, pp. 8, 10).

In addition to declaratory relief, Plaintiff seeks injunctive relief in the form of being returned to the G2 custody classification level, his original housing in the dorms, and his job in the garment factory. (D.E. 1, pp. 4-5). Plaintiff sues Director Davis because she is in charge of the TDCJ and approved of the 2016 policy change that led to Plaintiff's reclassification.

## IV.  LEGAL STANDARD

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

Director Davis styles her motion as one pursuant to Federal Rule of Civil Procedure 12(b)(1). Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1887 (2d Cir. 1996)). Lack of subject matter jurisdiction may be found in three instances: (1) the

complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Once the subject matter jurisdiction has been challenged, the party asserting jurisdiction retains the burden of proof that jurisdiction truly does exist. *Id*.

While making no express reference thereto, Director Davis also brings her motion pursuant to Federal Rule of Civil Procedure 12(b)(6) as she seeks dismissal of Plaintiff's complaint for failure to state a plausible claim for relief. (D.E. 12, pp. 2-3). Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "[A] plaintiff's obligation to prove the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 554-55. When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## V. DISCUSSION

### A. Eleventh Amendment (Prospective Injunctive Relief)

The Eleventh Amendment does not bar a plaintiff's claim for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123 (1908) (establishing exception to Eleventh Amendment immunity in cases where the alleged constitutional violation is caused by a state official's actions or refusal to act within the authority of his or her office). *See also Cantu Servs., Inc. v. Roberie*, 535 F. App'x 342, 344–45 (5th Cir. 2013) (recognizing that, in order to avoid an Eleventh Amendment bar of a claim raised against a state official in his official capacity, the complaint must allege an ongoing violation of federal law and seek prospective injunctive relief).

Pursuant to Rule 12(b)(1), Director Davis contends that the *Ex parte Young* exception does not apply in this case and that Plaintiff's claim for injunctive relief against her in her official capacity is barred by the Eleventh Amendment. (D.E. 12, p. 3). Plaintiff, however, seeks relief that is prospective in nature in that he requests to be placed back to the G2 custody classification level and returned to both his housing and job assignments for which he qualified at that classification level.

With regard to her Eleventh Amendment claim, Director Davis primarily argues that Plaintiff cannot establish actual success on the merits because he fails to allege facts sufficient to state a plausible equal protection claim. "For a permanent injunction to issue the plaintiff must prevail on the merits of his claim and establish that the equitable relief is appropriate in all other respects." *Watson v. Quarterman*, No. H-06-3260, 2008 WL 552447, at *4 (S.D. Tex. Feb. 27, 2008). However, as discussed below, Plaintiff has

stated a plausible equal protection claim at this early stage in the proceeding. Plaintiff, therefore, should have the opportunity to engage in discovery and prove both his claim and entitlement to the prospective injunctive relief requested. Accordingly, Director Davis's Motion to Dismiss (D.E. 12) should be denied to the extent she asserts Plaintiff's request for injunctive relief is barred by the Eleventh Amendment.

### B. Equal Protection (Class of One)

Plaintiff claims that his equal protection rights as a "class of one" have been violated because the implementation of the new internal classification policy treats him differently than inmates who are similarly situated. Plaintiff states that inmates having similarly-stacked sentences are being treated more favorably with their custody classification levels, living arrangements, and work assignments.

The Equal Protection Clause of the Fourteenth Amendment states that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. The Equal Protection Clause directs that similarly situated people should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

Equal protection jurisprudence typically has been concerned with governmental classifications that affect some groups of citizens differently than others. *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008). Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an identifiable group. *Id.* An equal protection claim can also be made when a plaintiff, rather than alleging class-based discrimination, alleges that he has been singled out as a so-called "class of one." *Id.* (citing *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)). A plaintiff makes a "class

7 / 11

of one" claim when he alleges that he has been intentionally treated differently from others similarly situated without a rational basis for the difference in treatment. *Id.* (citing *Olech*, 528 U.S. at 564).

In her motion, Director Davis argues that the TDCJ classification policy at issue belies Plaintiff's claim of being similarly situated to other inmates "because its provision explicitly assigns different policies, procedures, and custody levels to prisoners *based on their respective criminal offenses and institutional adjustment*—not just the inmate's sentences." (D.E. 12, p. 5) (emphasis in original). Director Davis further contends that the inmate comparator identified by Plaintiff who is serving "multiple-stacked life sentences" cannot be a sufficient comparator "without an accompanying allegation or evidence demonstrating this other inmate is also incarcerated for the same of similar offense(s) and with the same institutional adjustments and needs." (D.E. 12, p. 5).

Plaintiff maintains that he is similarly situated with other inmates who have received more favorable treatment by maintaining their G2 custody classification level and better job and housing assignments. (D.E. 15, p. 4). According to Plaintiff, "Defendant [Davis] has shown no conceivable basis, nor rational basis for TDCJ's 'CU60' Policy that disparately treats [Plaintiff] from inmates he is similarly situated with." (D.E. 15, p. 4).

Plaintiff bases his claim on a new UCC policy,[2] effective September 13, 2016, which reclassifies an inmate back to the more restrictive G3 custody classification when

---

[2] While Plaintiff has not attached a copy of the new policy to the complaint, it is identified both in his complaint and attached exhibits as "CU60." (D.E. 1, pp. 2, 8).

the total amount of time needed to become parole eligible on his stacked sentences exceeds 60 years. The new "CU60" policy identified by Plaintiff as applicable to him and other similarly-situated inmates makes no reference to an inmate's particular criminal offenses or other institutional adjustments. Director Davis does not reference the "CU60" policy in her motion and instead cites to the Unit Classification Procedure Manuel (UCPM) 2.00 that was attached to Plaintiff's complaint. (D.E. 1, pp. 12-14; D.E. 12, p. 5). Nothing in this section of the UCPM mentions the "CU60" policy identified by Plaintiff.

Plaintiff alleges that other inmates with multiple-stacked life sentences have been returned to the G2 custody level, have remained in the dorms, and have received their old jobs back. In his testimony at the *Spears* hearing, Plaintiff specifically cited one inmate with multiple-stacked life sentences as still living in the dorms. Plaintiff's allegations are sufficient to indicate that other inmates similarly situated to him are receiving more favorable treatment after the effective date of the new "CU60" policy and that no rational basis exists for the difference in treatment. *See Lane*, 2017 WL 8681965, at *2 (dismissing prisoner's equal protection claim brought in a habeas corpus action because he failed to identify any other similarly-situated inmates having sentences equivalent to life without parole that were permitted to have G2 custody level status). Because Plaintiff has alleged facts sufficient to make a "class of one" claim, Director Davis's

motion to dismiss (D.E. 12) should be denied with respect to Plaintiff's equal protection claim.[3]

## VI.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that Director Davis's motion to dismiss (D.E. 12) be **DENIED** in all respects.

Respectfully submitted this 14th day of March 2019.

_____
Jason B. Libby
United States Magistrate Judge

---

[3] Lastly, Director Davis argues that Plaintiff has failed to allege facts to warrant an award of declaratory relief because he failed to allege he is a "class of one." (D.E. 12, p. 7). However, as discussed above, Plaintiff has sufficiently stated a "class of one" equal protection claim.

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).